IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-03000-CMA-MJW

JACOB DANIEL OAKLEY,

    Plaintiff,

v.

RICK RAEMISCH, Executive Director (Individual and Official Capacities),

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on two motions for summary judgment — one filed by Plaintiff Jacob Daniel Oakley, an inmate of the Colorado Department of Corrections (CDOC), and the other filed by Defendant Rick Raemisch, Executive Director of the CDOC. (Doc. ## 87, 89.) For the following reasons, the Court grants summary judgment in Defendant's favor.

## I.    BACKGROUND

This case concerns the CDOC's handling of Plaintiff's inmate bank account. The following facts are undisputed.

Inmate bank accounts are handled in accordance with CDOC Administrative Regulations 200–02 and 200-15. (Doc. # 89, p. 3–4; Doc. # 87, p. 4.) If an inmate's bank account has a negative balance, fifty percent of each deposit is applied toward that deficit. (*Id.*) In addition, automatic garnishments are applied to each deposit in the

event that an inmate owes restitution, child support, medical expenses, court costs, or payments due to a conviction under the Code of Penal Discipline (COPD). (*Id.*)

During the applicable timeframe, Plaintiff had a negative bank account balance. (Doc. # 89, p. 5; Doc. # 94, p. 3.) Thus any deposits he made were subject to a fifty percent automatic reduction. (*Id.*) In addition, Plaintiff's deposits were subject to a twenty percent withholding for court-ordered costs and another twenty percent for court filing fees. (*Id.*)

Between May and June 2014, Plaintiff filed three administrative grievances, each one alleging that his bank account was being handled differently from the bank accounts of other inmates and essentially requesting an abeyance. (Doc. # 87-3, p. 7–10.) Plaintiff specifically mentioned differential treatment being applied to inmates Thomas Baskerville, Justin Frederickson and Tyler Morland. (*Id.*) The CDOC's response to each grievance was the substantially the same:

- Plaintiff's inmate account is being managed appropriately and correctly per AR 200-12, AR 100-15, and Colorado Revised Statutes;
- the ARs apply equally to all inmate accounts, with no exceptions; and
- any reference to the specifics of another inmate's account is irrelevant and private and will not be addressed. (*Id.*)

In September 2014, the CDOC granted an inmate at Fremont Correctional Facility, Inmate Doe,[1] an abeyance, or temporary suspension, from inmate banking

---

[1] In their stipulated protective order, the parties agreed to use a pseudonym for Inmate Doe. (Doc. # 80, ¶ 5).

regulations.[2] According to a letter written by the Fremont Warden, the CDOC granted the abeyance in response Inmate Doe's efforts to modify his previously-disruptive behavior and to "demonstrate to [Inmate Doe] that positive behavior will produce positive results." (Doc. # 87-3, p. 43.)

Plaintiff initiated this suit in November 2014. (Doc. # 1.) As pertinent here, Plaintiff brings a class-of-one equal protection claim under 42 U.S.C. § 1983, alleging that Defendant violated his right to equal protection of the laws with respect to the handling of his inmate bank account as compared to the handling of Inmate Doe's bank account. In addition to denying that he violated Plaintiff's right to equal protection, Defendant contends that Plaintiff failed to properly exhaust his administrative remedies or adequately plead his claim with respect to Inmate Doe.

Each party contends that summary judgment is warranted in his favor.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendant first argues that Plaintiff failed to exhaust his administrative remedies with respect to his argument involving Inmate Doe. The Court disagrees.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a). It follows that if an administrative remedy is not available, then an inmate cannot be required to exhaust it. *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). To be "available," a remedy must be "capable of use for the accomplishment of a purpose."

---

[2] Although granted in September 2014, the abeyance did not go into effect until March 2015.

*See Booth v. Churner*, 532 U.S. 731, 737 (2001). The United States Supreme Court has clarified that an administrative remedy is considered unavailable when "it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).

Under the circumstances presented here, the Court finds that an administrative remedy with respect to Plaintiff's claims involving Inmate Doe was unavailable and therefore unnecessary. Three primary reasons support this conclusion.

First, for all intents and purposes, Plaintiff already grieved the relief he presently seeks and his request was denied. The applicable administrative regulation governing the CDOC's grievance process provides that a grievance "shall address only one problem or complaint and include a description of the relief requested." (Doc. # 89-5, p. 8.) Plaintiff's 2014 grievances met these requirements; he complained of the CDOC's handling of his bank account in comparison to the bank accounts of "other inmates" and included at least three specific examples. Aside from mentioning Inmate Doe, Plaintiff's present complaint is no different. That Plaintiff now includes Inmate Doe, who was granted an abeyance *after* Plaintiff filed his 2014 grievances, does not alter that his previous complaints included "a description of the relief [presently] request[s]." *See Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006) ("[A] grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally.").

Second, even if Plaintiff had filed an additional grievance specifically mentioning Inmate Doe, the CDOC would not have indulged in the comparison. Each time Plaintiff

4

mentioned an inmate's name, the CDOC responded that the specifics of another inmate's account was "irrelevant" and "priva[te]" and would "not be addressed." Filing another round of complaints that included Inmate Doe's name would have operated as nothing more than a dead end.

Third, had Plaintiff filed an additional grievance comparing the handling of his bank account to Inmate Doe's, it would have been denied as duplicative. In addition to Plaintiff's 2014 grievances, Plaintiff filed at least three additional grievances in 2016. In the 2016 grievances, Plaintiff complained that the CDOC was not a proper collection agency and disputed all debts owed to them. (Doc. # 89-4, p. 22, Doc. # 89-5, p. 1–3.) In response, the CDOC denied Plaintiff's request as (1) addressing too many issues, and (2) duplicative of Plaintiff's grievances from 2014. (Doc. # 89-4, p. 21; Doc. # 89-5, p. 4.) The CDOC's final denial letter stated "Duplicate grievances that reiterate issues which have previously been grieved will not be addressed again. . . . In this instance the underlying issue is the same: management of your inmate banking account per regulation and CRS." (Doc. # 89-4, p. 21.) Considering that these grievances were only tangentially related to the 2014 grievances and were still denied as duplicative, it can hardly be said that a grievance addressing the same issues as those raised in 2014 would not be denied on the same grounds.

For these reasons, the Court concludes that Plaintiff's efforts to exhaust his administrative remedies were sufficient. Any further grievance mentioning Inmate Doe would certainly have operated as a dead end — with the CDOC "unable or consistently

unwilling to provide [the] relief [requested.]" *Ross*, 136 S. Ct. at 1860. Defendant's request for summary judgment based on administrative exhaustion is denied.

### III. SUFFICIENCY OF THE COMPLAINT

Defendant next contends that "there is no currently postured claim with respect to the abeyance given to [I]nmate Doe." (Doc. # 89, p. 14.) Defendant argues that because Plaintiff's Complaint does not include an "equal protection claim regarding [I]nmate Doe" this Court should "disallow any claim" regarding Inmate Doe as procedurally deficient. Although not entirely clear, Defendant appears to be complaining about the sufficiency of Plaintiff's Complaint. Defendant cites no procedural rules, case law, or statutory basis to support this contention, and the Court finds it meritless.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Capra v. Cook Cty. Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013) ("Plaintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints."). Moreover, a document filed pro se is "to be liberally construed," *Estelle*, 429 U.S., at 106, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers," *Erickson*, 551 U.S. at 94; cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Considering these legal principles, Plaintiff's Complaint appears sufficient to provide Defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Plaintiff's Complaint, which he filed pro se, specifically references the CDOC's handling of similarly-situated inmates and details precisely how Plaintiff believed their bank accounts were being handled differently from his account. (Doc. # 1, p. 6–7, 10–12.) When discussing inmates whose "situation[s] are the same as [his] in every material respect," Plaintiff stated that "there are more [inmates], of course but [he] only mentioned a few to keep things short and simple." (*Id.* at 6.) To require Plaintiff to allege every single example of similarly-situated inmates when Defendant previously refused to discuss *any* inmate accounts with Plaintiff based on privacy policies would place Plaintiff, as a pro se prisoner, in a nearly impossible position.

Accordingly, to do substantial justice to Plaintiff's pro se allegations, the Court denies Defendant's unsupported request that it dismiss Plaintiff's claim as insufficiently plead.

### IV. <u>EQUAL PROTECTION CLAIM</u>

Defendant further contends that "there is no evidence supporting an equal protection claim with respect to . . . [I]nmate Doe" and that summary judgment should therefore be granted in his favor. (Doc. # 89, p. 16.) Plaintiff counters that he is "entitled to summary judgment on his equal protection claim" because the undisputed

7

facts show that Defendant deprived him of a constitutional right under color of law. (Doc. # 87, p. 8.) Having thoroughly considered the issues, the Court concludes that summary judgment in Defendant's favor is warranted.

**A. LAW**

Plaintiff's allegations regarding the CDOC's unfair handling of his inmate bank account do not implicate either a suspect class or a fundamental right. As such, his claim falls under the rubric of a "class-of-one" equal protection claim, explicitly recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). *See, e.g.*, *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210, 1215 (10th Cir. 2004) (analyzing victim's "reverse-selective enforcement claim" for inadequate investigation of crime under "class of one" principles).

Courts approach class-of-one claims with caution, wary of "turning even quotidian exercises of government discretion into constitutional causes." *Engquist v. Or. Dep't. of Agric.*, 553 U.S. 591 (2008). In *Jennings*, 383 F.3d at 1210–11, for example, the Tenth Circuit discussed the risks such a claim could pose to ordinary government decision-making:

> [T]he concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors. It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation. It would become the task of federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review. This would constitute the federal courts as general-

8

> purpose second-guessers of the reasonableness of broad
> areas of state and local decision-making: a role that is both
> ill-suited to the federal courts and offensive to state and local
> autonomy in our federal system.

In *Kansas Penn Gaming, LLC v. Collins*, the Tenth Circuit explained further:

> These concerns are magnified with challenges to low-level
> government decision-making, which often involves a great
> deal of discretion. The latitude afforded police officers,
> [prison officials,] . . . and other, similar government actors
> necessarily results in a sizeable amount of random variation
> in outcome. If even innocuous inconsistencies gave rise to
> equal protection litigation, government action would be
> paralyzed.

Considering this legal backdrop, class-of-one claims are rarely successful and plaintiffs must meet exacting standards to prevail. *Franklin v. City of Merriam*, No. 06-2421-CM, 2008 WL 1884189, at *4 (D. Kan. Apr. 25, 2008).

First, a plaintiff must establish that the others treated differently were "similarly situated in *every material respect*." *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir. 2006); *Kansas Penn Gaming*, 656 F.3d at 1220 (finding it insufficient to simply allege that others have "comparable" or "similar" conditions — the claim must be supported by specific facts plausibly suggesting the they are similar in *all material respects*). The plaintiff must "provide *compelling* evidence of other similarly situated persons who were in fact treated differently," because "the multiplicity of relevant (nondiscriminatory) variables" involved in law enforcement decisions "are not readily susceptible to the kind of analysis the courts are competent to undertake" in assessing equal protection claims. *Grubbs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006) (citing *Jennings*, 383 F.3d at 1214–15 (quotation omitted)).

9

Second, a plaintiff must show this difference in treatment was without rational basis — that is, the government action was "irrational and abusive," *Jennings*, 383 F.3d at 1211, and "wholly unrelated to *any* legitimate state activity," *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (emphasis added). This standard is objective — if there is a reasonable justification for the challenged action, the Court will not inquire into the government actor's actual motivations. *Jicarilla Apache Nation*, 440 F.3d at 1211.

**B. ANALYSIS**

Under these exacting standards required to succeed on a class-of-one claim, Plaintiff cannot prevail.

First, he does not adequately allege that he was similarly-situated to Inmate Doe in all material respects. Although Plaintiff describes some similarities between them, such as their negative account balances, disruptive behavioral history, and recent spout of good behavior, he does not provide the level of specificity required to succeed on a class-of-one challenge, nor does he adequately demonstrate how those similarities are material with respect to the CDOC's abeyance decision. *See Jennings*, 383 F.3d at 1213–14 ("Looking only at one individual . . . there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive and largely subjective canvassing of all possible relevant factors. It is therefore imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class."). If permitted to proceed to trial, Plaintiff's case could apply to a whole slew of inmates who

have also demonstrated disruptive behavior, had a negative bank account balance, and showed some improvement from time to time — a ripple effect that class-of-one jurisprudence cautions against. See Jennings, 383 F.3d at 1214 (quoting *Lakeside Builders, Inc. v. Planning Bd. of the Town of Franklin*, 2002 WL 31655250, at *3 (D. Mass. Mar. 21, 2002)) (A "broad" definition of similarly situated is "not useful for equal protection analysis [because] it could be applied to any group of applicants where, looking back, one could see that there had been some who succeeded and some who failed. For example, high school students whose applications to a particular college were rejected could allege that they were being treated differently from the 'similarly situated' fellow students whose applications were accepted.").

     A second, and more important, shortcoming in Plaintiff's case is that he has failed to identify how the different treatment provided to Inmate Doe was wholly arbitrary and completely lacking in any legitimate justification. Indeed, Plaintiff states that "he does not contend that the decision to grant Inmate Doe a waiver is inherently irrational or unrelated to a legitimate state interest." (Doc. # 87, p. 14.) Plaintiff instead argues that it was irrational and arbitrary only to the extent that Plaintiff was not also granted an abeyance. Under these circumstances, Plaintiff presents a distinction without a difference. It is undisputed that the CDOC's abeyance decision was individualized and specific, with the ultimate goal of improving Inmate Doe's behavior and promoting order in the prison. The CDOC's differential treatment of other inmate's, including Plaintiff's, bank accounts rests on these same legitimate interests. Contrary to Plaintiff's assertions, the CDOC's abeyance decision was not a simple, one-dimensional inquiry,

11

governed by any specific AR; indeed, the CDOC considered a multiplicity of relevant variables, including Inmate Doe's behavioral, social, medical, and work history. *See Jennings*, 383 F. 3d at 1214–15 (discussing the high bar for complaints addressing "inherently subjective and individualized enforcement . . . that implicates a multiplicity of relevant . . . variables, from the relative culpability of the defendants to the optimal deployment of prosecutorial resources") (internal quotation marks omitted).

The Court is likewise not persuaded by Plaintiff's contention that the CDOC acted irrationally and arbitrarily by violating the stated goals and requirements of the AR banking provisions. The applicable ARs do not plainly prohibit the CDOC from granting abeyances to inmates. Moreover, even to the extent that the CDOC's decision fell outside the standard banking protocol, prison administrators have historically been accorded wide-ranging deference in making decisions that "are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) — it can hardly be said that one stray banking decision, made for disciplinary and rehabilitative reasons, presents a sufficient basis to support an equal protection claim of constitutional dimensions.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For the foregoing reasons, Plaintiff has failed to sufficiently establish the required elements of his class-of-one equal protection claim. Accordingly, Plaintiff cannot overcome summary judgment.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. # 87) IS DENIED and Defendant's Motion for Summary Judgment is GRANTED. (Doc. # 89.) It is

FURTHER ORDERED that this case be DISMISSED WITH PREJUDICE.

DATED: August 8, 2017

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge